Bruce H. Nagel, Esq.
Attorney Id No. 025931977
*bnagel@nagelrice.com*
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ  07068
973-618-0400
Attorneys for *Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JESSICA POLLARD, on behalf of herself and the Putative class, <br><br> Plaintiffs, <br><br> vs. <br><br> AEG LIVE, LLC, AEG LIVE NJ, LLC, CONCERTS WEST, <br><br> Defendants. | : <br> : <br> : <br> : Civil Action No. <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**<u>COMPLAINT – CLASS ACTION</u>**

Plaintiff, Jessica Pollard, residing in New York, New York, by and through her undersigned attorneys, by way of Complaint, brings this suit against Defendants AEG Live, LLC, AEG Live NJ, LLC, (together "AEG") and Concerts West (collectively "Defendants") to recover damages owed to her and others similarly situated.

## I. NATURE OF THE ACTION

1.  AEG Live, LLC, AEG Live NJ, LLC, and Concerts West are the promoters for Bon Jovi's 2010 "The Circle" tour[1] and Justin Beiber's 2013 "Believe Tour"[2].

2.  Bon Jovi's "The Circle" tour played four dates, May 26, 27, and 29, 2010 and July 9, 2010 at Metlife Stadium in East Rutherford, New Jersey.  206,099 tickets combined were sold for the four shows.

3.  Justin Beiber's "Believe Tour" played two dates at the Prudential Center in Newark, New Jersey on July 30 and 31, 2013. 26,824 tickets combined were sold for the two shows.

4.  Upon information and belief, Defendants withhold more than 5% of tickets from release to the general public, forcing fans into a secondary market for the tickets where they must pay substantially more than the ticket's face value to attend some of the most popular and iconic concerts of the year.

5.  Upon information and belief, Defendants have deals with brokers or others in the secondary market to purchase large blocks of tickets prior to those tickets being offered to the public.

---

[1] http://www.aegworldwide.com/music/tours/bonjovi, last visited February 5, 2014.
[2] http://www.aeglive.com/news/view/10531, last visited February 5, 2014.

6. The aforesaid acts constitute a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.* ("CFA") that result in damage to the Plaintiff Class and Defendant's Unjust Enrichment.

7. The action seeks damages and compensation to all class members from the Defendant, interest, disgorgement, costs of suit, treble damages and attorneys' fees as permitted under the Consumer Fraud Act or the common law, and any other damages deemed just and proper by the Court.

8. This class action is brought pursuant of Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased tickets or who could not afford to purchase tickets to Bon Jovi's "The Circle" tour or Justin Beiber's "Believe Tour" at a ticket price that is higher than the face value of the ticket from a period beginning with the first day tickets went on sale through the date of the concert. Excluded from the class are counsel representing the class and all persons employed by said counsel, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and

judicial staff, and any individual whose interest are antagonistic to other class members.

## II. JURISDICTION

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from the defendant, and seeks in the aggregate more than Five Millions Dollar ($5,000,000), exclusive of costs and interest. On information and belief, more than two-thirds of the members of the Class defined below are residents of states other than New Jersey.

## III. PARTIES

10. Plaintiff Jessica Pollard is an individual residing in New York, New York and a purchaser of tickets to Bon Jovi's 2010 "The Circle" tour at MetLife Stadium[3] on May 29, 2010 and Justin Bieber's 2013 "Believe Tour" at the Prudential Center in July 2013. Plaintiff is a representative plaintiff.

11. Upon information and belief, Defendants, AEG Live, LLC and AEG Live, NJ, LLC (collectively "AEG") are Delaware limited liability companies engaged in the business of producing,

---

[3] At the time of the concert, the stadium went by the name New Meadowlands Stadium.

4

promoting, and selling tickets to concerts and other live entertainment events. AEG Live, LLC's headquarters is located at 5750 Wilshire Boulevard, Suite 501, Los Angeles, CA 90036. AEG Live, NJ is registered conduct business in New Jersey, with its registered agent located in West Trenton, Mercer County, New Jersey.

12. Defendant AEG Live, LLC is comprised of touring, festival, broadcast, merchandise and special event divisions. The current and recent concert tour roster includes artists such as Alicia Keys, American Idols, Bon Jovi, Carrie Underwood, Daughtry, Enrique Iglesias, Jennifer Lopez, Justin Bieber, Kenny Chesney, Leonard Cohen, Paul McCartney, Taylor Swift, The Black Eyed Peas, Trey Songz and Wisin & Yandel.[4]

13. Defendant Concerts West is AEG Live, LLC's touring division located at is located at 5750 Wilshire Boulevard, Suite 501, Los Angeles, CA 90036. Concerts West is one of the world's largest producers and promoters of live tours and events for rock and pop superstars including: Bon Jovi, The Black Eyed Peas, Celine Dion, Paul McCartney, Leonard Cohen, Usher, and Tina Turner.[5]

14. Defendants ABC Companies 1-10 are fictitious names for various subsidiary, parent, predecessor, and/or acquiree

---

[4] http://www.aegworldwide.com/music/music, last visited February 5, 2014
[5] Id.

entities of Defendants AEG Live, LLC, AEG Live NJ, LLC, and/or Concerts West that have had any interest in or control over the sale, presale, or holdback of tickets to concerts from sale to the general public.

## IV. VENUE

15. Venue in this action properly lies in this District, pursuant to 28 U.S.C. Sec. 1319(a) and the Defendant is subject to personal jurisdiction in the District in which this action is filed.

## V. FACTUAL BACKGROUND

16. Bon Jovi's "The Circle" tour was held at MetLife Stadium (then known as New Meadowlands Stadium) located at One MetLife Stadium, in the Meadowlands, Rutherford, New Jersey on May 26, 27 and 29, 2010 and July 9, 2010.

17. Justin Beiber's "Believe Tour" was held at the Prudential Center located in Newark New Jersey on July 30 and 31, 2013. Ticket prices were $95 or $45.

18. AEG and Concerts West were the promoters of Bon Jovi's "The Circle" Tour and Justin Beiber's "Believe Tour". Upon information and belief, as promoters of the tour AEG and Concerts West were responsible for ticket allocation and sales for the tour.

19. Upon information and belief, AEG and Concerts West withheld more than 5% of tickets to Bon Jovi's concerts at MetLife Stadium from sale to the general public.

20. Upon information and belief, AEG and Concerts West withheld more than 5% of tickets to Justin Beiber's concerts at the Prudential Center from sale to the general public.

21. MetLife's seating capacity of approximately 51,524 for the Bon Jovi concerts brought in revenue of approximately $21,386,437.[6]

22. The Prudential Center's seating capacity of approximately 13,412 for the Justin Beiber concerts brought in revenue of approximately $2,211,502.[7]

23. In 2001, the New Jersey Legislature passed a law aimed at the practice of charging excessive premiums in excess of the price of the tickets. The bill also prohibited the practice of the withholding of more than five percent (5%) of the available seating from sale to the public for any event. The sponsors of the Bill envisioned penalties to include the remedies of the Consumer Fraud Act.

24. Indeed, the passage of the law, N.J.S.A. 56:8-35-1, *et. seq.* became embodied in the New Jersey Consumer Fraud Act.

---

[6] http://en.wikipedia.org/wiki/The_Circle_Tour, last visited February 19, 2014
[7] http://www.webcitation.org/6IjqJ0aD6, last visited February 5, 2014

25. Upon information and belief, Defendants practice of withholding more than 5% of its tickets to the general public violates the New Jersey Consumer Fraud Act.

### FACTS RELATING TO PLAINTIFF

26. On April 21, 2010, plaintiff purchased 4 tickets to Bon Jovi's May 29, 2010 concert.

27. Plaintiff paid one hundred and seventy-five dollars ($175) for each Bon Jovi ticket, which upon information and belief, was far in excess of the face value of the tickets.

28. On April 8, 2013, Plaintiff purchased 3 tickets to Justin Beiber's concert.

29. Plaintiff paid two hundred and thirteen dollars ($213) for each Justin Beiber ticket which, upon information and belief, was far in excess of the face value of the tickets.

### CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on his own behalf, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P 23 (b) (3). The Class consists of potentially thousands of ticket purchasers to Bon Jovi's "The Circle" tour and Justin Beiber's "Believe Tour" victimized by Defendants' unlawful practices.

31. The Class consists of all persons who paid for or could not afford to pay for tickets to Bon Jovi's "The Circle"

8

tour and Justin Beiber's "Believe Tour" in excess of the printed ticket price. The Class excludes counsel representing the class and all person employed by said counsel, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

32. Defendants subject Plaintiff and each of the Class members to unlawful practices and harmed them in the same manner. Now, Plaintiff and each Class Member seek to enforce their rights and remedies pursuant to the New Jersey Consumer Fraud Act and the equitable theory of Unjust Enrichment.

33. <u>Numerosity</u>: The proposed class is so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the Class consists of thousands of members.

34. <u>Typicality</u>: Plaintiff's claims are typical of the claims of their respective Class members in that they suffered similar damages resulting from a single course of conduct by

9

Defendant.  Each of the class members asserts the same legal causes of action.

35. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and this counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to the Class.

36. <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered harm as a result of Defendants' unlawful and fraudulent conduct. A class action is superior to other viable methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because

individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in the Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

37. *Commonality:* There are questions of law and fact common to Plaintiff and the class that predominate over any questions affecting only the individual members of the class. The common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendants withheld more than five percent (5%) of Bon Jovi's "The Circle" tour tickets to the general public;

    b. Whether Defendants withheld more than five percent (5%) of Justin Beiber's "Believe Tour" tickets to the general public;

    c. Whether Defendants' actions violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-35.1;

    d. Whether Defendants were unjustly enriched by its acts and omissions at the expense of the Plaintiff and the class;

e. Whether Plaintiff and the putative class sustained damage and loss thereby;

f. The scope, extent and measure of damages and equitable relief that should be awarded;

g. Whether Defendants' acts and omissions entitle Plaintiff and the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit;

h. Whether Plaintiff and the Class are entitled to injunctive relief; and

i. Whether Plaintiff and the Class are entitled to declaratory relief.

### COUNT I
### Violation of N.J.S.A. 56:8-35.1
### (Bon Jovi concerts)

38. Plaintiff, on behalf of herself and all others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

39. Defendants are the provider(s) of all tickets to the Bon Jovi "The Circle" tour at MetLife Stadium on May 26, 27, 29, 2010 and July 9, 2010.

40. Upon information and belief, Defendants withheld more than 5% of tickets from sale to the general public.

41. Such practice is in contravention of N.J.S.A. 56:8-35.1, which prohibits withholding any amount of tickets more than 5 percent (5%) from the public.

42. Violation of this statute is a *per se* violation of the CFA and Defendants are strictly liable to the Plaintiff and the Class for such violations.

43. Plaintiff and class members suffered ascertainable losses consisting of the purchase price of the ticket in excess of the face value, and accordingly were harmed by Defendants' conduct in violation of the CFA.

WHEREFORE, Plaintiff demands judgment against the Defendant, on her behalf and that of similarly situated class members for all relief available pursuant to the CFA and other relief as this Court deems just and proper.

## COUNT II
### Violation of N.J.S.A. 56:8-35.1
### (Justin Bieber concerts)

44. Plaintiff, on behalf of herself and all others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

45. Defendants are the provider(s) of all tickets to the Justin Bieber "Believe Tour" at the Prudential Center on July 30 and 31, 2013.

46. Upon information and belief, Defendants withheld more than 5% of tickets from sale to the general public.

47. Such practice is in contravention of N.J.S.A. 56:8-35.1, which prohibits withholding any amount of tickets more than 5 percent (5%) from the public.

48. Violation of this statute is a *per se* violation of the CFA and Defendants are strictly liable to the Plaintiff and the Class for such violations.

49. Plaintiff and class members suffered ascertainable losses consisting of the purchase price of the ticket in excess of the face value, and accordingly were harmed by Defendants' conduct in violation of the CFA.

WHEREFORE, Plaintiff demands judgment against the Defendant, on her behalf and that of similarly situated class members for all relief available pursuant to the CFA and other relief as this Court deems just and proper.

### COUNT THREE
**Unjust Enrichment**

50. Plaintiff, on behalf of herself and all others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

51. Defendants' acts and omissions allowed the Defendants to gain millions of dollars in profits that would not have been gained, but for Defendants' acts and omissions.

52. Plaintiff and the putative Class paid an amount for tickets that exceed the value of the tickets as a result of Defendants' acts and omissions.

53. Plaintiff and the putative Class suffered damages due to the Defendants' acts and omissions as alleged herein.

54. Defendants have been unjustly enriched as a result of Defendants' unlawful acts.

55. Defendants lack legal justification for its acts and omission alleged herein at Plaintiff and the putative Class' expense.

WHEREFORE, Plaintiff demands judgment against Defendants, on her own behalf and that of similarly situated class members, for disgorgement of the monies by which the Defendants were unjustly enriched, compensatory damages including interest, punitive damages, attorneys' fees, all damages pursuant to the CFA, costs of suit and other relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury as to all issues in the above matter.

### DESIGNATION OF TRIAL COUNSEL

Bruce H. Nagel, Esq., is hereby designated as trial counsel for the within matter.

        **NAGEL RICE LLP**
        *Attorneys for Plaintiff and Putative Class*

        *s/ Bruce H. Nagel*
        Bruce H. Nagel, Esq.
        103 Eisenhower Parkway
        Roseland, New Jersey 07068
Dated: February 21, 2014    (973) 618-0400