UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JESSICA POLLARD, on behalf of herself and the putative class, | : : : : | Civil Action No. 14-1155 (SRC) |
| Plaintiff, | : : | OPINION |
| v. | : : | |
| AEG LIVE, LLC, AEG LIVE NJ, LLC, CONCERTS WEST, | : : : | |
| Defendants. | : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendants AEG Live, LLC, AEG Live NJ, LLC and Concerts West (collectively "Defendants" or "AEG") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Jessica Pollard ("Plaintiff" or "Pollard") has opposed the motion. The Court has considered the papers filed by the parties.   For the reasons that follow, the Court will grant the motion to dismiss but will grant Plaintiff leave to file a further amended complaint.

      **I.**      **BACKGROUND**

      This lawsuit arises out of the marketing and sale of tickets to a Bon Jovi concert held at MetLife Stadium in East Rutherford, New Jersey and to a Justin Bieber concert held at the Prudential Center in Newark, New Jersey.  It implicates a provision of the New Jersey Consumer Fraud Act ("NJCFA") that limits how many tickets to concerts may be withheld from sale to the

1

general public. The Court has jurisdiction over this putative class action suit pursuant to 28 U.S.C. §1332(d).  The following facts giving rise to named Plaintiff Pollard's claims are drawn from her Amended Complaint, and the Court assumes them to be true for purposes of this motion only.

On April 21, 2010, Pollard, a resident of New York, purchased four tickets, at $175 apiece, for Bon Jovi's May 29, 2010 concert at MetLife Stadium, which was one of the shows on the band's "The Circle" tour.  On April 8, 2013, she purchased three tickets, at $213 apiece, to a July 2013 Justin Bieber concert at the Prudential Center, part of Bieber's "Believe" tour. Plaintiff alleges that in both instances, she paid far in excess of the tickets' face value. She claims that the ticket prices were inflated as a result of the wrongful withholding of tickets for sale to the general public by tour promoter AEG.

Pollard filed this lawsuit on February 21, 2014.  Her Amended Complaint sets forth two claims under the NJCFA.  She asserts that Defendants violated that statute's ticket withholding provision, N.J.S.A. 56:8-35.1, in connection with the Bon Jovi concert (Count I) and with the Justin Bieber concert (Count II).  She also seeks relief under the equitable theory of unjust enrichment (Count III).

## II. DISCUSSION

Defendants move for dismissal of the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

2

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

### A. NJCFA Claims

At the heart of this action is a single provision of the NJCFA prohibiting those with access to tickets to performances and other public events from restricting the supply of tickets and thus unfairly driving up the price of admission to the general public. The provision, N.J.S.A. 56:8-35.1 (hereinafter, "Section 35.1") states as follows:

> It shall be an unlawful practice for a person, who has access to tickets to an event prior to the tickets' release for sale to the general public, to withhold those tickets from sale to the general public in an amount exceeding 5% of all available seating for the event.

According to the October 31, 2001 Ticket Broker Report (the "Report") issued by the Ticket Brokering Study Commission (the "Commission") established by New Jersey's governor, tickets would be routinely held back from the initial sale to the general public by event promoters, venues and artists. Report at 14, 20-22, attached to Nagel Cert. as Ex. A. The

3

Commission found that tickets were diverted to the secondary market for re-sale by brokers or given to sponsors and other insiders and never put on sale to the general public. Id. at 20-22. The report noted that this withholding "robs the general public of the chance to get tickets by dramatically decreasing the number of seats initially available to ordinary citizens at the lowest available prices." Id. at 14. The Commission recommended that legislation be enacted to curtail this conduct. Id. at 26. The New Jersey State Legislature enacted Section 35.1 as a provision of the Anti-Scalping Act, including it generally in the state's consumer protection statute, the NJCFA.

Before turning to a Rule 12(b)(6) analysis of Pollard's claim under Section 35.1, the Court must address the choice of law issue raised by Defendants in their moving papers.

   1. Choice-of-Law Analysis

Defendants argue that as a New York resident, Pollard may not avail herself of New Jersey's consumer protection statute and instead must look to the laws of her own state to redress her alleged injuries. Plaintiff takes the position that it is premature to make a choice-of-law determination at this stage of the litigation, and, alternatively, that should the Court decide the issue based on the available facts, New Jersey law would indeed apply. While a choice of law analysis is fact intensive, resolving a conflict between the laws of competing jurisdictions is not necessarily inappropriate at the motion to dismiss stage. Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 445 (D.N.J. 2012); see also Skeen v. BMW of N. Am., LLC, 2014 WL 283628, at *4 (D.N.J. Jan. 24, 2014) ("Courts in this circuit and district routinely find that the facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage."). "The decision about whether a choice-of-law issue is ripe or premature should be made on a case-by-case basis depending on the facts presented." Montich, 849 F. Supp. 2d at 445; see also

4

Cooper v. Samsung Elec. Am., Inc., 374 F. App'x 250, 255 n.5 (3d Cir. 2010) (affirming the district court's order granting a motion to dismiss and expressly noting that it was not premature for the court to resolve the choice of law question as to the plaintiff's statutory consumer fraud claim).  When the facts needed to make a choice of law determination are pled in the complaint, a district court may proceed to decide the issue, particularly where no party has demonstrated that further factual development is needed.  Montich, 849 F. Supp. 2d at 445; cf. Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d. 486, 491 (D.N.J. 2009) (deferring decision on choice of law issue presented on a Rule 12(b)(6) motion but noting that "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss.").  At the outset, the Court finds that the Amended Complaint before it presents sufficient facts to engage in the choice of law analysis on this motion and resolve the matter of whether the consumer protection statute of New Jersey or New York governs Plaintiff's claim.

     Because the Court has diversity jurisdiction over this action, it must apply the choice of law principles of New Jersey, the forum state.  Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).  New Jersey has adopted the analysis set forth in the Restatement (Second) of Conflict of Laws (hereinafter "Second Restatement") and known as the "most significant relationship" test.  P.V. v. Camp Jaycee, 197 N.J. 132, 142-44 (2008); see also Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing Camp Jaycee).  This test requires the Court to determine whether an actual conflict exists between the laws of the competing states and, if so, to determine which state has the most significant relationship to the parties and cause of action.  Camp Jaycee, 197 N.J. at 143; Maniscalco, 709 F.3d at 206.  In exploring the latter question, the Court must be guided by the factors outlined in the Second Restatement's "cornerstone" section, section 6, as well as the specific section which corresponds

5

to the nature of the claim at issue. Camp Jaycee, 197 N.J. at 140. In this case, which presents a tort claim, the applicable Second Restatement section is 145, which simply refers the Court back to the principles of section 6 to determine the state with the "most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws §145(1) (1971).[1]

Turning to the threshold question in a choice-of-law analysis, the Court concludes that the NJCFA and New York's consumer protection statute are in actual conflict. Claims governed by the NJCFA are subject to a six-year limitations period, whereas New York's statute requires that claims be initiated within three years of the accrual of the cause of action. Compare N.J.S.A. 2A:14-1 with N.Y. Gen. Bus. Law § 349 and CPLR 214. Additionally, New Jersey's statute provides for treble damages. N.J.S.A. 56:8-19. While New York's statute authorizes such damages where an individual has brought suit on his own behalf, they are not available in a class action suit. See Gen. Bus. Law 349; CPLR 901(b); Ridge Meadows Homeowners' Ass'n v. Tara Dev. Co., Inc., 242 A.D.2d 947 (N.Y. App. Div. 1997) (finding that although plaintiffs had met the prerequisites for class certification, they were "barred by CPLR 901 (b) from maintaining a class action for the minimum and treble damages imposed by section 349 (h) of the General Business Law.").

---

[1] Defendants maintain that specific guidance is provided by Second Restatement § 148, because Plaintiff's claim is a "fraud" claim. This position elevates the nomenclature of Plaintiff's statutory claim over its substance. Section 148 applies "when the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's *false representations* . . . ." Restatement (Second) of Conflict of Laws §148 (emphasis added). Pollard's claim does not involve any alleged false representations at all. While it is true that Plaintiff avers that Defendants have violated a provision of the "Consumer Fraud Act," the statute encompasses a variety of conduct considered to be deceptive trade practices, including but not limited to, misrepresentations and false statements. The violation for which Pollard seeks relief consists of the alleged commission of a business practice prohibited by the statute. None of the cases cited by Defendants apply Section 148 in the context of the type of misconduct alleged in this case; indeed, they all concern allegedly false statements and/or concealment of information. See, e.g., Maniscalco, 709 F.3d (applying Section 148 in a consumer fraud case based on alleged concealment of defects in the defendant's product). Section 148 is simply not applicable.

Next, the Court must apply the relevant factors set forth in Restatement § 6(2), in accordance with the guidance provided by Camp Jaycee.[2] In that case, in which the New Jersey Supreme Court incorporated the factors into its analysis under the most significant relationship test, the Court held as follows:

> Reduced to their essence, the section 6 principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.

Camp Jaycee, 197 N.J. at 147 (citations and quotation omitted). These factors demonstrate that New Jersey has the most significant relationship to Plaintiff's allegations of Defendant's improper conduct with respect to the ticket sales underlying this litigation.

The first factor, the interests of interstate comity, "require[s] courts to consider whether application of a competing state's law would frustrate the policies of other interested states." Fu v. Fu, 160 N.J. 108, 122 (1999). Though Plaintiff is a New York resident, applying New Jersey's consumer fraud law will not frustrate New York's interest in protecting its citizens from unfair trade practices. The NJCFA has been described as "one of the strongest consumer protection laws in the nation." Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 547 (D.N.J. 1998). Applying New Jersey's law furthers the state's strong policy in preventing the diversion of tickets to the secondary market and ensuring the public's equal access to tickets to events taking place at performance venues in New Jersey, such as the concerts involved in this litigation.

---

[2] Plaintiff argues that New Jersey law must apply pursuant to Second Restatement § 6(1), but that provision is limited in application to instances in which there is a statutory directive regarding choice of law. Plaintiff cites no provision of the NJCFA in which the New Jersey State Legislature has made such a directive. The absence of such a provision is consistent with the comments to Second Restatement's § 6(1), which observe that "a court will rarely be directed by statute to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue." Restatement (Second) of Conflict of Laws § 6 cmt. b.

The second factor also favors application of New Jersey law.  Here, the court must look to the parties' "justified expectations and their needs for predictability of result." Fu v. Fu, 160 N.J. 108, 123 (1999).  Because the concerts took place in a New Jersey venue, the parties can reasonably and justifiably expect to be subject to New Jersey's law prescribing the manner in which tickets to shows and other events open to the public must be sold.   AEG chose to promote the Justin Bieber concert and the Bon Jovi concert in the State of New Jersey, presumably in the hopes of benefitting from selling tickets to those shows.  It is reasonable for AEG to have expected that this purposeful activity would be subject to the laws of the state in which the concerts were held, regardless of the purchaser's state of residence.

Third, the Court considers the interests underlying the field of tort law, which are compensation and deterrence.  Fu, 160 N.J. at 123. The NJCFA is driven by a "very strong policy to deter wrongdoing" as reflected by its authorization of treble damages without need to prove willful or malicious conduct.  Int'l Union of Operating Eng'rs v. Merck & Co., N.J. 384 Super. 275, 302 (App Div. 2006).  While the consumer protection laws of both New York and New Jersey seek to compensate injured parties, the decision by AEG to promote concerts held in New Jersey and benefit from commerce in this state places emphasis on the furtherance of the law's deterrent purpose.  It does not appear that New York's consumer protection statute has an equivalent or similar provision regarding ticket sales and/or conduct which would funnel tickets into the secondary market and drive up prices for consumers.  Thus, the Court finds that, in light of the facts of this case, that is, Defendants' promotion of New Jersey shows, alleged withholding of concert tickets and the existence of a provision of New Jersey's consumer protection statute seeking to penalize precisely the misconduct alleged here, the third factor of the analysis supports application of the NJCFA to Pollard's claims.

8

Fourth, with regard to the interests of judicial administration, the Court finds that this factor must, in the context of the other choice-of-law factors, weigh in favor of applying New Jersey law. The Third Circuit has observed the at the "interests of judicial administration might favor applying one state's law in a putative class action, rather than the law of each plaintiff's home state . . . ." Maniscalco, 709 F.3d at 210. That observation fits with the facts of this putative class action, in which concertgoers to the MetLife Stadium and Prudential Center shows may have hailed from various states, particularly those neighboring New Jersey, as in the case of the New York Plaintiff. Of course, the simplicity and efficiency of applying one state's law, rather than the various laws of all concert attendees' home states, "must yield to the interests of the other factors." Id. In this case, unlike other consumer protection suits involving out-of-state plaintiffs, application of the NJCFA for ease of judicial administration does not conflict with the interests of the other factors, which also favor New Jersey law.

Finally, the competing interests of the states favors applying New Jersey law to this case. As discussed above, New Jersey's interest in deterring unfair practices in the sale of tickets to entertainment events taking place in this state, penalizing corporate entities doing business here for manipulating the market for tickets sold, and protecting concertgoers from paying the driven-up prices can be furthered only if Section 35.1 of the NJCFA applies to sales for New Jersey-venued events, regardless of whether the purchaser resides in New Jersey or not. See Camp Jaycee, 197 N.J. at 151 (holding that the law of the state where the alleged tortfeasor acted and repeatedly performs its tasks must apply if that law is to have any deterrent impact and protect others from harm, "regardless of the home state of the [plaintiffs]."). In other words, for the statute to have the intended of effect of regulating the conduct of event promoters, ticket sellers and others choosing to engage in this type of business in New Jersey, the NJCFA's limitation on

9

ticket withholding must apply to the claims of ticket purchasers patronizing such events, regardless of each purchaser's home state.

        2.    <u>Examination of the claims under Rule 12(b)(6)</u>

To state a claim under the NJCFA, a plaintiff must allege three elements: (1) unlawful conduct by the defendants; (2) ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. <u>Bosland v. Warnock Dodge, Inc.</u>, 197 N.J. 543, 557 (2009).

Defendants primarily argue that Pollard's NJCFA claim is deficient because it fails to plead any facts concerning the violation at issue. They correctly point out that Plaintiff does not identify any act of withholding tickets in which Defendants allegedly engaged. The Amended Complaint avers, in the barest language, that "upon information and belief, Defendants withheld more than 5% of tickets to the Bon Jovi Concerts from sale to the general public." (Am. Compl. ¶ 40.) The allegation of wrongdoing with respect to the Justin Bieber Concerts is equally spare. These averments do no more than parrot the language of Section 35.1 and are patently insufficient under <u>Iqbal</u>.

Plaintiff's brief in opposition to the motion for summary judgment attempts to provide additional factual support, stating AEG withheld tickets from sale to the general public, gave them to insiders and sponsors and knowingly diverted tickets into the resale market. Aside from the well-established prohibition on amending a pleading through a brief in opposition to a motion to dismiss, see <u>Federico v. Home Depot</u>, 507 F.3d 188, 201–02 (3d Cir. 2007), this assertion fails to state a plausible claim that AEG violated Section 35.1. The Court remains uninformed of the actions taken by AEG that provide the basis of this allegation; it is conclusory at best. Plaintiff appears to rely on the logic that because she purchased tickets to the Bon Jovi and Justin Bieber

concerts on the secondary market and paid an amount in excess of face value for the tickets, AEG must have withheld tickets from sale to the public in violation of Section 35.1.  This conclusion, that AEG restricted the market for tickets to the Bon Jovi and Justin Bieber concerts, does not necessarily follow from the sole factual premise given in support.  Based on the facts, it is equally plausible that Plaintiff's purchase occurred on the secondary market because the general demand was such that all tickets had sold out prior to the date on which she bought tickets.  For the Court to deduce that AEG violated Section 35.1, additional facts must be pled.  A sufficient claim might allege the manner in which AEG did not make tickets generally available and/or some method or practice of diverting them from the regular on-sale.  For example, Plaintiff's opposition brief approximates the Rule 8(a) standard by asserting that AEG wrongfully withheld tickets "by giving tickets to its sponsors, artists, media outlets, and other music insiders."  (Opp'n Br. at 31.)  Again, however, this assertion and its factual underpinnings, whether it be an allegation as to the subject concerts specifically or as to a standard business practice of AEG, are not pled in the Amended Complaint.

The Amended Complaint does, however, adequately plead the NJCFA elements of ascertainable loss and causation. An "ascertainable loss" within the meaning of the NJCFA is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 605 (3d Cir. 2012).  A plaintiff must also plead "a causal nexus between the alleged act of consumer fraud and the damage sustained." N.J. Citizens Action v. Schering-Plough Corp., 367 N.J. Super. 8, 15 (App. Div. 2003).  Assuming, for purposes of the analysis of these elements, that facts demonstrating a plausible violation of Section 35.1 had been pled, Pollard properly alleges that as a result of AEG's ticket diversion, she paid a price "far in excess of the face value of the tickets" for the

11

Bon Jovi and Justin Bieber concerts.  (Am. Compl. ¶¶ 27, 29.) Defendants argue that Plaintiff's alleged economic loss fails to state a claim for relief under the NJCFA because it relies on an invalid theory of price inflation. This theory, they point out, has been rejected as a basis for ascertainable loss in NJCFA actions, including by this Court. See, e.g., In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL 2043604, at *31 (D.N.J. July 10, 2009) ("In re Schering Plough I") (holding that plaintiff had not stated a cognizable ascertainable loss under the NJCFA when it claimed that was injured as a result of the allegedly fraudulent marketing scheme's effect on the price of pharmaceuticals sold by the defendant); N.J. Citizen Action v. Schering-Plough Corp., 367 NJ. Super. 8, 16 (App. Div. 2003) (declining to recognize ascertainable loss based on paying a higher price for an inferior product, reasoning that this approach would "virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered.")  The factual context of this case as well as the substance of the statutory violation at issue here distinguish it from the cases Defendants cite in support of their argument. This Court's opinion in In re Schering-Plough I, like the more commonly seen NJCFA actions, dealt with alleged misrepresentations by a defendant and a claim for relief for violation of N.J.S.A. 56:8-2, the provision of the NJCFA which prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate. . . ."  The rejected price inflation theory of loss in those cases presupposed that the misrepresentations had been incorporated into the price of the good or service paid by the plaintiff, wrongfully causing the plaintiff to pay a greater amount than he would have had the

12

information known to the market been accurate. This "fraud on the market" theory of loss has indeed been recognized only in the context of federal securities fraud litigation. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 392 (2007). This NJCFA action, in contrast, does not involve any alleged misrepresentation, nor do Plaintiff's price inflation allegations implicate a "fraud on the market" approach. Pollard does not allege that she suffered a loss because AEG made false remarks, for example, in promoting the concerts, which were reflected in the artificially high price paid by Pollard for tickets. Rather, Pollard contends that AEG wrongfully manipulated the market for tickets to the concerts by withholding an amount of tickets in excess of the amount permitted by Section 35.1 and thus drove up the ticket price by reducing the supply available to the general public. Her claim that she overpaid for the tickets as a result of Defendants' alleged NJCFA violation is not premised on a fraud on the market, but rather on the basic economic reality of supply and demand. The Court thus concludes that the Amended Complaint has sufficiently stated ascertainable loss and causation in connection with Defendants' alleged ticket withholding.

The Court can discern the outlines of a potentially viable claim for relief under the NJCFA, but sufficient factual content as to the misconduct in violation of Section 35.1 must be provided. The Court will accordingly dismiss the claims set forth in Counts I and II of the Amended Complaint without prejudice. Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff will be granted leave to file a Second Amended Complaint to re-plead the NJCFA claims in accordance with Rule 8(a) and this Opinion. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

### B. Unjust Enrichment

To establish unjust enrichment under New Jersey law,[3] "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). A plaintiff must also allege that he "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Unjust enrichment, however, "is not an independent theory of liability, but is the basis for a claim of quasicontractual liability." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008) (citing Nat'l Amusements, Inc. v. N.J. Turnpike Auth., 261 N.J. Super. 468,478 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div. 1994)).

Plaintiff's unjust enrichment claim against AEG fails for a number of reasons. The facts of this case do not support the existence of any quasi-contractual relationship between Pollard and AEG. Even insofar as Pollard may argue that AEG has been unjustly enriched by her purchase of the overly expensive tickets, the Amended Complaint does not allege that she bought the tickets from AEG or that the parties were otherwise in some direct relationship. See Nelson v. Xacta 3000, Inc., 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) ("A claim of unjust enrichment also requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim."). Indeed, the Amended Complaint does not actually identify the seller of Pollard's tickets. Moreover, Pollard fails to allege that she did not receive some "expected remuneration" for that benefit, nor is there any indication that such remuneration

---

[3] Although Defendants assert in their brief that New Jersey law "does not apply to Plaintiff's claims," they discuss choice-of-law principles only with regard to the statutory consumer protection claim. No argument regarding the unjust enrichment claim is presented. In light of the parties' failure to develop choice-of-law arguments on this issue, the Court will apply the law of the forum state to analyze the unjust enrichment claim.

would be at issue in a ticket purchase transaction.  Pollard's unjust enrichment claim appears to amount to an attempt to re-frame the misconduct and injury underlying her NJCFA claim.  "In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."  Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999).  It is not, under new Jersey law, recognized as an independent tort cause of action.  Swift v. Pandey, 2014 WL 1366436, at *5 (D.N.J. Apr. 7, 2014) (citing Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion.")).

Accordingly, the unjust enrichment claim will be dismissed with prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion, dismissing the NJCFA claims without prejudice and the unjust enrichment claim with prejudice.  Leave to re-plead the NJCFA claims will be granted, as set forth above.

An appropriate Order will be filed.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  September 16, 2014